UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA RUNIONS,

        Plaintiff,

v.

NATIONAL CREDIT ADJUSTERS, L.L.C.,
NIAGARA RESTITUTION SERVICES, INC.,
and YAMAL Y. RAMIREZ JR.,

        Defendants.

_____/

## COMPLAINT

### I.    Introduction

1.     This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

2.     Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent, criminal and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte, North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked

number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer.  The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122,

by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.     On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.     Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan

Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

## II.    Jurisdiction

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.    Parties

7.      Plaintiff Lisa Runions, formerly Lisa Sherburne, is an adult, natural person residing in Montcalm County, Michigan.  Ms. Runions is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Runions is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.      Defendant National Credit Adjusters, L.L.C. ("NCA") is a Kansas limited liability company, with offices at 327 West 4th, Hutchinson, Kansas 67504. The registered agent for NCA in Michigan is LexisNexis Document Solutions Inc., 601 Abbott Road, East Lansing, Michigan 48823. NCA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  NCA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  NCA is a "debt collector" as the term is defined and used in the FDCPA.  NCA is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, NCA is a "collection agency" and "licensee" as the terms are defined and used in MOC. NCA is licensed (No. 2401002654) by the State of Michigan collect consumer debts in Michigan.

4

9.      During all times pertinent hereto, NCA directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Runions that are described in this complaint.

10.      Defendant Niagara Restitution Services, Inc. ("NRS") is an active New York corporation, purportedly doing business at 4246 Ridge Lea Road, Suite 47, Amherst, New York 14226. According to documents filed by NRS with the State of New York, the Chief Executive Office of NRS is defendant Yamal Y. Ramirez Jr., 1349 Caravelle Drive, Niagara Falls, New York 14304-2725. NRS has used multiple telephone numbers in connection with its debt collection business, including 716-247-6272, 716-298-7542, 716-524-4376, 716-833-0386, 716-833-0735, 855-546-8931, 855-546-9025, 855-641-6960 and 877-546-8854. Other telephone numbers likely used by NRS include 716-298-7542, 855-479-3428, 855-546-9028 and 877-429-4151. NRS receives mail at P.O. Box 214, Amherst, New York 14226-0214. NRS previously maintained an internet website at www.niagararestitutionservice.com. NRS receives email at nrservice@live.com and nrservice-support@live.com. NRS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NRS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NRS is a "debt collector" as the term is defined and used in the FDCPA. NRS is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, NRS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

11.      The Better Business Bureau for Upstate New York has logged dozens of consumer complaints against NRS that are listed on the BBB internet website and describe a pattern and practice of the same unlawful debt collection practices that are described in this complaint.

12.     During all times pertinent hereto, NRS directly and indirectly participated in the unlawful and criminal debt collection practices to collect an alleged debt from Ms. Runions that are described in this complaint.

13.     Defendant Yamal Y. Ramirez, Jr., age 36, is a natural person, purportedly residing at 1349 Caravelle Drive, Niagara Falls, New York 14304-2725. Mr. Ramirez has had multiple telephone numbers registered to his use, including 716-563-7709 and 716-622-4823. Mr. Ramirez is an owner, officer, manager, employee and agent of defendant NRS. Mr. Ramirez uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Ramirez regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Ramirez is a "debt collector" as the term is defined and used in the FDCPA. Mr. Ramirez is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Ramirez is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

14.     During all times pertinent hereto, Mr. Ramirez (a) created the collection policies and procedures used by NRS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NRS, (c) oversaw the application of the collection policies and procedures used by NRS and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by NRS and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Runions as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NRS and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful

6

debt collection practices used by NRS and its employees and agents in attempts to collect an alleged debt from Ms. Runions as alleged in this complaint.

15. During all times pertinent hereto, Mr. Ramirez directly and indirectly participated in the unlawful and criminal debt collection practices to collect an alleged debt from Ms. Runions that are described in this complaint.

16. On June 29, 2015, a complaint was filed in the United States District Court for the Western District of New York (Buffalo), Case No. 1:15-cv-580-FPG, on behalf of NRS and Mr. Ramirez, and against Michael Degen, a former co-owner of NRS and business partner of Mr. Ramirez. The complaint states that "[t]he focus of the parties' business was the purchase, sale and collection of debtor accounts" and alleges that on October 14, 2014, Mr. Degen embezzled $250,000.00 from the company's bank accounts.

17. On December 10, 2012, Mr. Ramirez entered into a plea agreement in the matter of *United States of America v. Yamal Ramirez,* United States District Court for the Western District of New York, Case No. 11-CR-102-S, and agreed to plead guilty to Count 1 of the indictment which charged a violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute and to distribute 100 kilograms of marijuana), for which the mandatory minimum sentence is a term of imprisonment of 5 years and the maximum possible sentence is a term of imprisonment of 40 years, a fine of $5,000,000, and a term of supervised release of at least 4 years and up to life. Paragraph 27 of the plea agreement states: "It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes." Mr. Ramirez currently is scheduled to be sentenced on October 19, 2016 at 9:00 a.m. before the Hon. William M. Skretny. Despite the foregoing, and while the plea agreement was in place, Mr. Ramirez directly and indirectly participated in the unlawful and criminal debt

collection practices to collect an alleged debt from Ms. Runions and numerous other consumers as described in this complaint.

18.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

19.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.   Facts**

20.     On or about December 27, 2010, plaintiff Lisa Runions, then known as Lisa Sherburne, allegedly accessed the internet website www.thinkcash.com and allegedly borrowed approximately $1,000.00 from First Bank of Delaware ("FBD") in what is commonly called a "payday loan." FBD assigned the alleged transaction an account number of 61433690. Any

money borrowed by Ms. Runions was borrowed and used the money for personal, family and household purposes.

21.     Defendants claim that Ms. Runions failed to pay the alleged debt.

22.     Ms. Runions claims that any debt that she may have had to FBD was paid. Ms. Runions denies owing any money to FBD, defendants, or anyone else in connection with the FBD account.

23.     Defendant NCA claims that on September 13, 2011, FBD charged off Ms. Runions' unpaid debt and sold Ms. Runions' account directly to NCA.

24.     NCA claims that in October 2012, NCA placed Ms. Runions' account for collection with a non-party entity named Debt Management, LLC.

25.     NCA claims that Debt Management, LLC was unable to collect the account.

26.     NCA claims that on October 15, 2014, Debt Management, LLC returned the uncollected account to NCA and was no longer authorized to collect the account.

27.     NCA claims that at no time since October 15, 2014 has NCA placed the account with any other entity to collect the account.

28.     NCA claims that from September 13, 2011 to this day, NCA has remained the sole owner of Ms. Runions' account.

29.     NCA claims that the current unpaid balance on Ms. Runions' account is $1,198.21.

30.     NCA claims that it has never placed the account for collection with defendant NRS or defendant Mr. Ramirez.

31.     NCA claims that NRS and Mr. Ramirez are running an "extortion scam" and have

9

stolen Ms. Runions' account information that remains the property of NCA.

32.     On February 2, 2016 and again on February 18, 2016, NRS and its employees and agents placed calls to Ms. Runions' cellular telephone in efforts to collect money allegedly owed by Ms. Runions on the FBD account.  Ms. Runions was instructed to call NRS regarding "File Number 66428." The calls originated from telephone number 877-546-8854, which belongs to NRS and Mr. Ramirez.

33.     On April 11, 2016, defendants' employee and agent, identified as Gina Fallen, spoke by telephone with Mr. Runions and made the following statements in efforts to collect the alleged debt from Mrs. Runions:

  a)     My name is Gina Fallen.  The name of my company is Niagara Restitution Services.

  b)     At the end of 2010, Mrs. Runions took out a loan from ThinkCash and the money was deposited in Mrs. Runions' credit union account.

  c)     The last four digits of the ThinkCash account number are 3690.

  d)     Mrs. Runions borrowed approximately $900.00.

  e)     Mrs. Runions currently owes a balance of $1,698.21, which includes interest and a $500.00 collection fee.

  f)     Mrs. Runions failed to repay the loan and the account went into collections in the beginning of 2012.

  g)     We are calling Mrs. Runions to see you she wants to take care of this on a voluntary basis.

  h)     We can settle the debt for a payment of $850.00.

10

i)      ThinkCash has hire us to either collect the debt or send it to our Legal Department to file a lawsuit and garnish Mrs. Runions' wages.

j)      If Mrs. Runions does not pay us money, I will turn it over to my Legal Department and they will garnish Mrs. Runions' wages.

k)      My legal team, they will put in for a suit. They will. They will put in for a garnishment.

l)      I will sign off on it and I will send it to my Legal Department.

m)      This call is being recorded and I will send the recording to the Legal Department to use when they put in for a garnishment.

34.    The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, criminal extortion and unlawful harassment of the consumers, their relatives and other third parties.

35.    Defendants and their employees and agents in the described communications failed to meaningfully identify themselves and their companies.

36.    Defendants and their employees and agents in the described communications falsely represented and falsely implied that Ms. Runions owes a debt that she does not owe.

37.    Defendants and their employees and agents in the described communications falsely represented the amount of Ms. Runions' alleged debt.

38.    Defendants and their employees and agents in the described communications falsely represented and falsely implied that they had the authority to collect the alleged debt.

11

39.     Defendants and their employees and agents in the described communications falsely represented and falsely implied that ThinkCash was the current owner of the alleged debt.

40.     Defendants and their employees and agents in the described communications falsely represented and falsely implied that they had been hired by ThinkCash to collect the alleged debt.

41.     Defendants and their employees and agents in the described communications falsely represented and falsely implied that defendants have a legal department.

42.     Defendants and their employees and agents in the described communications falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

43.     Defendants and their employees and agents in the described communications falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

44.     Defendants and their employees and agents in the described communications falsely represented and falsely implied that a lawsuit was going to be filed against Mrs. Runions to collect the alleged debt.

45.     Defendants and their employees and agents in the described communications falsely represented and falsely implied that Mrs. Runions wages would be garnished to collect the alleged debt.

46.     Neither NRS nor Mr. Ramirez have a Legal Department.

47.     Neither NRS nor Mr. Ramirez intended to file a lawsuit against Ms. Runions in any Michigan court in efforts to collect the alleged debt.  In fact, neither NRS nor Mr. Ramirez

has ever filed any lawsuit in any Michigan court to collect any debt from any person.

48. NRS and Mr. Ramirez unlawfully added a $500.00 collection fee to the alleged account balance.

49. NRS and Mr. Ramirez have stolen Mrs. Runions' account information from NCA or have somehow acquired Mrs. Runions' stolen account information and have used that information to attempt to extort money from Mrs. Runion. Alternatively, NCA placed the account for collection with NRS and Mr. Ramirez and are liable for the unlawful acts of NRS and Mr. Ramirez as agents of NCA.

50. Even if NRS and Mr. Ramirez stole Mrs. Runions' account information from NCA or somehow acquired Mrs. Runions' stolen account information, NCA was reckless or negligent in its handling of Mrs. Runions' stolen account information (which includes Mrs. Runions' social security number, date of birth, banking and employment information), making NCA liable for the unlawful acts of NRS and Mr. Ramirez.

51. The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

52. The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

53. The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

54. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. §

13

1692e(2)(A).

55.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

56.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

57.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

58.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

59.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

60.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

61.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. §

1692e(8).

62.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

63.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

64.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

65.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

66.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

67.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

68.    Defendants and their employees and/or agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

69.    Morever, defendants' threats constitute criminal extortion under Michigan law. M.C.L. § 750.213 states in pertinent part:

15

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

70.     Defendants and their employees and agents criminally extorted money from Ms. Runions and violated M.C.L. § 750.213.

71.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

72.     Defendants failed to provide Ms. Runions with the information it was required to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

73.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, yet to be identified in discovery, are engaged in a criminal organization and scheme, through which they directly and indirectly conspire to purchase and collect delinquent payday loans, as well as to collect money in connection with accounts they do not own or on which no money is owed, by using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Michigan law), and that include the use of scripted threats of faked litigation and criminal extortion, and that include demands for payments in

16

amounts that exceeded the amount expressly authorized by the agreement creating the debt or permitted by law.   Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful, criminal tactics, to collect or attempt to collect money from more than one thousand persons.  The criminal enterprise remains active and ongoing.

74.     Each defendant and each defendant's employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

75.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

76.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

77.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

78.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has

17

suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.     Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

79.     Plaintiff incorporates the foregoing paragraphs by reference.

80.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2– Michigan Regulation of Collection Practices Act

81.     Plaintiff incorporates the foregoing paragraphs by reference.

82.     Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

19

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

83.     Plaintiff incorporates the foregoing paragraphs by reference.

84.     Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: April 13, 2016

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com